UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

CANDIDO SERRANO,

                 Defendant.
------------------------------------------X

**Sweet, D.J.,**

04 Cr. 424-19 (RWS)

SENTENCING OPINION

USDNY

ELECTRONICALLY FILED

FILED: 5/9/05

        On May 2, 2005, Defendant Candido Serrano ("Serrano") appeared before this Court and allocuted to the conduct charged in the sole count of the indictment, conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Serrano's plea was accepted at that time. Serrano will be sentenced to 120 months' imprisonment and five years' supervised release. A special assessment fee of $100 is mandatory and is due immediately.

**Prior Proceedings**

        On May 6, 2004, the government filed a sealed indictment against Serrano and his co-defendants, charging them with a single count of violating 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Serrano was issued on the same day. Serrano was arrested later

that day, and he has remained in custody since that time. Serrano entered a guilty plea on May 2, 2005, which this Court accepted on that date, and currently Serrano is scheduled for sentencing on May 19, 2005.

## The Sentencing Framework

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed --

  (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B)  to afford adequate deterrence to criminal conduct;

  (C)  to protect the public from further crimes of the defendant; and

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

2

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

Serrano was born in the Bronx, New York on September 10, 1970. He is the older of two children born to his parents and, after the age of five, was raised primarily by his mother after his parents separated. He describes his upbringing as generally good and shares a close relationship with his mother to this day.

Though Serrano has never married, he has two children, aged fourteen and five. Before his incarceration, Serrano

supported his children financially and maintained regular contact with them.

Serrano has reported no assets.

Serrano acknowledges having a history of heroin abuse, introducing himself to the drug at the age of twenty and increasing his use shortly thereafter to four or five bags per day. He reports having used heroin fairly regularly from 1990 until his arrest for the instant offense in May 2004.

Although Serrano has participated in an estimated seven drug detox programs and three rehabilitation programs over the years, he has never been able to remain drug-free for an extended period of time.

Labeled a "slow learner" in the second grade, Serrano was placed in special education classes through the sixth grade. He attended Roosevelt High School in the Bronx but dropped out prior to completing the ninth grade. Subsequently, he has not partici-pated in any additional formal education.

Serrano has several prior criminal convictions. He was sentenced on April 27, 1993, to one year incarceration after pleading guilty to attempted criminal sale of a controlled substance in the third degree. Also on April 27, 1993, Serrano

pled guilty to a different charge of attempted criminal sale of a controlled substance in the third degree, which occurred at a different time from the sale underlying his first conviction. For this second conviction, he received a one year term of imprisonment to run concurrently with the previously imposed sentence.

On August 22, 1996, Serrano was sentenced to two and a half to four years imprisonment after pleading guilty to an indictment charging him with criminal sale of a controlled substance in the fifth degree. He was released to parole supervision on July 27, 1997, after serving less than one year in prison. He was discharged from parole on August 5, 2001,when he successfully reached his maximum expiration date without accruing further arrests or unlawful incidents.

**The Offense Conduct**

The indictment filed in this action charges that from at least 1999 through May 2004, Serrano, along with his nineteen co-defendants and others, were members of a criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Daly Avenue Organization" or the "Organization"). According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions. The Organization

operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Serrano was a "worker" or "pitcher" for the Organization. Workers or pitchers for the Organization would be provided heroin on consignment by managers in the Organization, and would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it. Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin. According to the indictment, eleven of Serrano's co-defendants also acted as workers or pitchers.

According to the government, based on observations on the street as well as interviews, the Organization sold as much as 50 bundles of heroin a day, which amounts to approximately one kilogram per month, although the actual amount could vary from month to month. With respect to Serrano specifically, the government estimates that he should be held accountable for conspiring to distribute between 10 and 30 kilograms of heroin.

Serrano was arrested on May 11, 2004.

## The Relevant Statutory Provisions

The statutory minimum term of imprisonment for the sole count of the indictment is ten years and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. If a term of imprisonment is imposed, the Court subsequently shall impose a term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Serrano is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is required. See 18 U.S.C. § 3013.

Since this is Serrano's third criminal conviction for distribution of a controlled substance, he may be permanently declared ineligible for any or all federal benefits, as determined by the Court pursuant to 21 U.S.C. § 862(a)(1)(B). Federal benefit is defined to mean "'any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States' but 'does not include any retirement, welfare, Social Security, health,

disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.'" See 21 U.S.C. § 862(d).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

**The Guidelines**

The November 1, 2004 edition of the United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1(a)(2), which specifies that the base offense level is set in accordance with the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(2). At his allocution, Serrano indicated that he knowingly conspired with

others to possess, with intent to distribute, heroin.  The PSR indicates that the amount for which the government estimates that Serrano should be held accountable is between 10 and 30 kilograms of heroin.  In light of this latter amount, and pursuant to the Drug Quantity Table, the base offense level is 36.

Pursuant to U.S.S.G. § 4B1.1,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.  As Serrano was more than eighteen years of age at the time of the instant controlled substance offense and has two prior controlled substance convictions not arising out of the instant offense conduct, he is a career offender within the meaning of U.S.S.G. § 4B1.1(a).

Where the offense level for a career offender calculated pursuant to the table under U.S.S.G. § 4B1.1(b) is greater than the offense level otherwise applicable, the offense level from the table shall apply.  In accordance with that table, the offense level determined under § 4B1.1(b) is 37.

Subsection (b) also provides that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b). Pursuant to § 4B1.1(b), Serrano's Criminal History Category is elevated to VI. *See, e.g., United States v. Marseille*, 377 F.3d 1249, 1252-53 (11th Cir. 2004) (applying the Criminal History Category enhancement where the offense level set forth in the table under § 4B1.1(b) was lower than the offense level otherwise calculated and, thus, inapplicable), *petition for cert. filed*, -- U.S.L.W. -- (U.S. Oct. 19, 2004) (No. 04-6961); *but see United States v. Winbush*, 264 F. Supp. 2d 1013, 1016 n.5 (N.D. Fla. 2003) (noting that the Criminal History Category enhancement set forth in § 4B1.1(b) applies, by its terms, only to those cases "under this subsection" and concluding that a defendant whose offense level exceeded the offense level otherwise applicable under subsection (b) was not being sentenced "under this subsection," and, therefore, that the Criminal History Category enhancement was inapplicable).

Based on Serrano's plea allocution, he has shown recognition of responsibility for the offense. Based on his timely notification of his intention to plead guilty and because the base offense level is greater than 16, the offense level is reduced by three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b).

The adjusted offense level resulting from the foregoing calculations and discussion is 34.

Based on the offense level of 34 and a Criminal History Category of VI, the guideline range for imprisonment is 262 to 327 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(b).

Serrano is not eligible for probation because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5B1.1(b)(2), comment. n.2.

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4).

Subject to Serrano's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). Furthermore, pursuant to § 3553(a)(5)(A), "any pertinent policy statement issued by the Sentencing Commission" also must be considered.

Serrano argues that he should receive the mandatory statutory minimum sentence of 120 months, instead of a sentence within the Guideline range, because his prior criminal convictions are interrelated with his long history of drug addiction and

because the convictions relied upon in concluding that he is a career offender pursuant to U.S.S.G. § 4B1.1(a) are remote, and, as such, are given too much weight in the criminal history calculation, thus over-representing the seriousness of Serrano's prior criminal history.

In formulating the Guidelines, the Sentencing Commission recognized the potential harm of overstating a defendant's criminal history and thus exposing the defendant to punishment far in excess of what may be necessary to deter recidivism. Pursuant to U.S.S.G. § 4A1.3(b)(1),

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1). A downward departure under this section may be appropriate "if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3 comment. n.3; see also United States v. Carrasco, 313 F.3d 750, 757 (2d Cir. 2002) ("This type of departure [pursuant to § 4A1.3] is most frequently used when a series of minor offenses, often committed many years before the instant offense, results in a [Criminal History Category] that overstates the seriousness of the defendant's prior record.")

13

Factors to consider in granting a downward departure under § 4A1.3 may include "the amount of drugs involved in [the defendant's] prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [Criminal History Category] VI." United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001).

Horizontal downward departures under § 4A1.3 are limited in their extent, as they may not exceed one criminal history category for any defendant deemed a career offender pursuant to U.S.S.G. § 4B1.1. See U.S.S.G. § 4A1.3(b)(3)(A). Under the circumstances present here, however, the Second Circuit has authorized vertical downward departures under U.S.S.G. § 5K2.0(b). See, e.g., United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995) (noting that "in the case of a defendant whose offense level is raised by his criminal history into career offender status, [the district court's] discretion may be exercised, to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both" where the sentence called for by the guidelines over-represents the seriousness of the defendant's prior criminal history); see also Mishoe, 241 F.3d at 220 ("In some circumstances, a large disparity in that relationship [between the punishment prescribed by Criminal History Category VI and the degree of punishment imposed for prior offenses] might indicate that the career offender sentence provides a deterrent effect so in

14

excess of what is required in light of the prior sentences and
especially the time served on those sentences as to constitute a
mitigating circumstance present 'to a degree' not adequately
considered by the Commission.") (citing 18 U.S.C. § 3553(b)).

While the Sentencing Commission and the aforementioned
cases discuss the appropriateness of departing downward within the
Guidelines, such analysis preceded the Supreme Court's decision in
Booker. Now, post-Booker, the Guidelines are merely advisory, and
a sentencing court must consider the Sentencing Commission's intent
as just one of several salient factors, see 18 U.S.C. §
3553(a)(5)(A), in determining whether to impose a Guideline
sentence or a non-Guideline sentence and the length of such
sentence.

Clearly, the Sentencing Commission intended that the
sentencing court carry discretion in determining the
appropriateness of categorizing a defendant as a career offender,
an intention echoed by the Second Circuit, and expected that the
sentencing court would reduce a defendant's range of punishment if
the career offender designation were misplaced.   In this case,
Serrano's label as a career offender is, in fact, misplaced.

To begin, Serrano is a heroin addict.  He has suffered
from this addiction for the majority of his adult life, and all of
his criminal convictions (five total, though only three trigger

15

criminal history points) stem from drug-related activity. He has never been accused, arrested or convicted for any crime of violence. Serrano was labeled a "slow learner" in school and was placed in special education classes through the sixth grade; he dropped out of school entirely before completing the ninth grade. Although he reports sporadic employment, Serrano claims minimal education and few marketable skills with which to sustain employment. As a drug addict with limited job opportunities, Serrano supported his drug habit by selling drugs.

The fact that Serrano's prior criminal convictions may have been influenced by or the result of his addiction to heroin and other drugs does not provide a sufficient basis for departure under the Guidelines. "Drug or alcohol dependence or abuse is not a reason for a downward departure." U.S.S.G. § 5H1.4; see also U.S.S.G. § 5K2.0(d)(1) (prohibiting departures based on drug or alcohol dependence or abuse); accord United States v. Payton, 159 F.3d 49, 61 (2d Cir. 1998). However, post-Booker, such prohibitions provide merely guidance to the sentencing court, and the realities of Serrano's personal "history and characteristics" must also be considered under 18 U.S.C. § 3553(a)(1).

Furthermore, the Guideline prohibition against considering a defendant's drug addiction does not affect a sentencing court's authority to factor in the remoteness of a defendant's convictions in determining whether he ought to be

16

classified as a career offender. The three prior convictions that constitute the basis for Serrano's career offender designation occurred in 1993 and 1996, as set forth above. The 1993 controlled substance offenses each involved the sale of an unspecified amount of an unspecified controlled substance to an undercover officer. The 1996 controlled substance offense also involved the sale of an unspecified amount of an unspecified controlled substance to an undercover officer. All three offenses occurred in the same vicinity in the Bronx, New York, which is also in the vicinity of where the instant offense is alleged to have occurred.

Serrano was sentenced to a term of one year incarceration on each of the 1993 convictions, which were run concurrently, and he served approximately eight months, having benefitted from the standard New York State "good time" provision. He was sentenced to a term of two and a half to five years imprisonment on the 1996 conviction, and he was released on parole after serving just under one year. He completed parole without incident and has not been incarcerated for any length of time since his release in July 1997.

Serrano has never spent more than one year in prison before the instant offense. He now faces a minimum mandatory term of imprisonment of ten years. The disparity between the sentences imposed and time served with regard to his earlier convictions and the sentence dictated here by the career offender categorization is significant. The Criminal History Category that would have applied

17

were it not for the career offender designation is IV,[1] and the adjusted offense level that would have applied but for Serrano's career offender status is 33.[2] The resulting sentencing range would have been 188 to 235 months, a substantially lesser sentence than his current Guideline sentencing range of 262 to 327 months.

When considering the advisory Guideline range, this Court also considers what Serrano's Guideline range would have been without his career offender designation, given the Sentencing Commission's policy statement warning of the potential over-representation of criminal history due to such designation and given the remoteness in time of Serrano's three prior convictions.

The goal of the career offender classification is to achieve a deterrent effect and to address adequately the concerns regarding recidivism that are reflected in that classification scheme. As the Second Circuit notes in <u>Mishoe</u>,

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship

---

[1] Were it not for the career offender designation, Serrano's prior convictions would have resulted in a Criminal History of IV, based on a total of 7 criminal history points calculated pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.1(b).

[2] Based on the government's estimates, Serrano conspired to distribute between ten and thirty kilograms of heroin, thereby triggering a base offense level of 36. Given that he accepted responsibility in a timely manner, as detailed previously, his adjusted offense level is 33.

> between the sentence for the current offense and the
> sentences, particularly the times served, for the prior
> offenses.

241 F.3d at 220. As Serrano never has spent more than one year

incarcerated, despite his three prior criminal convictions

involving a controlled substance, any term of imprisonment

significantly greater than one year will achieve the deterrent

effect underlying the career offender designation.

Balancing the need for meaningful deterrence with section

3553(a)'s statutory demand to "impose a sentence sufficient, but

not greater than necessary, to comply with the purposes" of

sentencing, <u>see</u> 18 U.S.C. § 3553(a), this Court believes a non-

Guideline sentence is warranted. <u>See United States v. Carvajal</u>,

2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (stating, "But [the

Career Offender guidelines] are excessive, in light of the nature

of [defendant's] recidivism, for the Guidelines for Career

Offenders are the same regardless of the severity of the crimes,

the dangers posed to victims' and bystanders' lives, and other

appropriate criteria. A sentence that satisfies only the

Guidelines would be "greater than necessary, to comply with the

purposes" set forth in the statute."); <u>United States v. Phelps</u>,

2005 WL 984156, at *6 (E.D. Tenn. April 1, 2005) (noting, "[i]t is

not unusual that the technical definitions of "crime of violence"

and "controlled substance offense" operate to subject some

defendants to not just substantial, but extraordinary, increases in

their advisory Guidelines ranges. In some of these cases, the Court believes a non-Guideline sentence may be sufficient, but not greater than necessary, to both comply with Congress's desire to punish recidivism and the purposes of sentencing set out in § 3553(a)(2).")

Serrano faces a minimum mandatory term of incarceration of 120 months. This length of imprisonment is at least ten times greater than that served by Serrano on each of his three prior convictions, an appropriate magnitude of difference. Cf. Mishoe, 241 F.3d at 220 (noting that a defendant who had twice served five- or six-year terms and thereafter committed another serious offense might be adequately deterred by a sentence of fifteen or twenty years).

**The Sentence**

For the instant offense, Serrano is sentenced to 120 months imprisonment and five years supervised release. As Serrano has been detained without bail since his arrest, he is not a candidate for voluntary surrender pursuant to 18 U.S.C. § 3143(a)(2).

A special assessment fee of $100 payable to the United States is mandatory and due immediately. Because Serrano lacks

financial resources and in consideration of the factors listed in 18 U.S.C. § 3572, no fine is imposed.

As mandatory conditions of supervised release, Serrano shall (1) abide by the standard conditions of supervision (1-13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; and (4) not possess a firearm or destructive device.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

Serrano shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The release of available drug testing evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer, is hereby authorized. Serrano is required to contribute to the costs of services rendered (co-payment), in an amount determined by the Probation Officer, based on ability to pay or availability of third-party payment.

Serrano shall report to the nearest Probation Office within 72 hours of release from custody and shall be supervised by the district of residence.

This sentence is subject to modification at the sentencing hearing now set for May 19, 2005.

It is so ordered.

New York, NY
May 19 , 2005

_____
ROBERT W. SWEET
U.S.D.J.